Eddie W. PATTON, Petitioner,

v.

STATE OF NORTH CAROLINA,
Respondent.

Civ. No. 2397.

United States District Court
W. D. North Carolina,
Asheville Division.

Heard April 19, 1966.

Decided July 20, 1966.

William W. Van Alstyne, Durham, N. C., for petitioner.

Wade Bruton, Atty. Gen. of North Carolina, and Theodore C. Brown, Jr., Staff Atty., Raleigh, N. C., for respondent.

## MEMORANDUM OF DECISION

CRAVEN, Circuit Judge.*

By establishing that he was unconstitutionally imprisoned, Eddie Patton won a new trial and, ironically, lost more of his liberty.

Patton was arrested on June 10, 1960, and has been imprisoned ever since. For lack of money to post bond, he stayed in jail in Bladen County from June 10, 1960, until his trial on October 26, 1960, when, without the assistance of counsel, he tendered a plea of nolo contendere to the felony of armed robbery. He was sentenced to serve a term of twenty years imprisonment in the State's prison and did not appeal.

Then came Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). In April of 1964 Patton filed in the Bladen County Superior Court an application for a post-conviction hearing. His petition was denied, but, subsequently, the Supreme Court of North Carolina, in an order dated September 2, 1964, ordered a plenary hearing for Patton. On November 17, 1964, the Superior Court of Bladen County found as a fact that Eddie Patton, at the October 1960 term, had requested the court to appoint counsel to represent him, and that the court had denied such request, and that at the time of the request Patton was an indigent person unable to employ counsel, and that he had not waived his right to counsel. As required by *Gideon,* the court concluded that Eddie Patton had been denied his constitutional rights "and that his sentence and the term for which he is now serving confinement is unlawful and should be set aside and declared null and void, and the said Eddie Walter Patton awarded a new trial." The North Carolina Prison Department surrendered Patton to the Sheriff of Bladen County. Bond was set in the amount of $12,000.00, and, for lack of it, Patton was confined in the Bladen County jail from about November 17, 1964, until about February 17, 1965, awaiting his second trial. Represented this time by counsel, he entered a plea of not guilty, but was convicted.

In February 1965, Patton received the same, identical sentence, i. e., twenty years imprisonment, that he had received in October of 1960. The sentence and the

---

* Sworn in as United States Circuit Judge, Fourth Circuit, on July 5, 1966, and designated to sit as United States District Judge in the Western District of North Carolina to complete matters pending at time of appointment.

trial judge's rationale of it appears in the transcript as follows:

"COURT: Before I announce punishment, I will take into consideration the fact that he has served four years, or nearly five years."

"COURT: I am going to give you—I would give you five more years than what I am giving you, but I am allowing you credit for the time that you have served. Judgment of the court is that the defendant be imprisoned in the State's prison for a term of 20 years, to be assigned to do labor as provided by law. He is in your custody, sheriff."

If Patton had not sought a new trial, he would have become eligible for parole in October 1965.[1] Under the second sentence, he will become eligible for parole in February 1970, i. e., some four years and four months after the original eligibility date. If ineligibility for parole be assumed and earned time factors ignored, he would have completed the first sentence in October 1980; whereas, on the same assumptions, he will complete the second sentence in February 1985.

As a result of having sought and obtained a new trial, Eddie Patton is worse off than he was before. It matters not to him whether what happened be verbalized as increased punishment or denial of credit for time served. Whether unjust or not, such a result is said to be lawful. The syllogism runs somewhat as follows:

(1) Patton did not have to seek a new trial and might well have been content with the sentence imposed upon him at the first trial in violation of his constitutional right to have the assistance of counsel.

(2) Since he chose to insist upon a new trial, if it turns out harmfully to him, it is his own fault and he should not be heard to complain. "A new trial * * * carries hazards, as well as benefits." State v. Merritt, 264 N.C. 716, 142 S.E.2d 687, at p. 691 (1965).

(3) "(I)n seeking and obtaining a new trial (Patton) must be deemed to have consented to a wiping out of all the consequences of the first trial." State v. White, 262 N.C. 52, 136 S.E.2d 205 at 208 (1964).

(4) "(H)e is not entitled as a matter of law to credit against the second sentence for time served under the original sentence", Ibid., and is simply fortunate that the second trial judge gave him such credit—if he did.

(5) Since the maximum punishment for the offense is thirty years, Patton is fortunate that he received only twenty years at the second trial—even though such leniency results in his serving some four years and four months longer than he would have served. "The mere fact that different judges imposed different punishment does not invalidate the sentence imposed at the second trial", and the second judge may lawfully increase the sentence. State v. Williams, 261 N.C. 172, 134 S.E.2d 163 at 165 (1964); (partially overruled in State v. Weaver, 264 N.C. 681, 142 S.E.2d 633, but not so as to withdraw the application of the quoted statement to Patton.)

To the foregoing, Eddie Patton interposes the Fourteenth Amendment to the Constitution of the United States and insists that:

(a) He is entitled to credit for time served in prison under the first sentence—which credit has been effectively denied him. He contends that the trial judge's remarks (quoted hereinabove) about taking the time served into account kept the promise to the ear and broke it to the heart.

(b) He may not be sentenced to a longer term of imprisonment at the second trial than he received

1. N.C.G.S. Section 140–58 provides that a prisoner shall be eligible for parole after serving a fourth of a determinate sentence, i. e., five years of the twenty.

at the first trial, i. e., that the sentence at the first trial is a punishment ceiling.

(c) The second sentence of imprisonment was unconstitutionally motivated by religious bias of the presiding judge contrary to the First Amendment of the United States Constitution as made applicable to the states through the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

May this court properly consider these contentions?

## JURISDICTION

Patton's petition for writ of habeas corpus was filed in this court on the 26th day of July, 1965, on a simple form used for processing the numerous applications received. Without benefit of counsel at that time, he alleged that he was unconstitutionally confined for the reasons mentioned in the order [2] summarily dismissing the application for the writ.

Patton appealed to the Court of Appeals for the Fourth Circuit, and his present contentions then became apparent for the first time. After consultation between the district judge and Chief Judge Haynsworth of the Court of Appeals for the Fourth Circuit, the case was remanded for further consideration. With the assistance of able counsel, the petition was amended to present the important contentions previously stated.

The power of a federal district court to consider a state prisoner's petition for writ of habeas corpus and to review the constitutionality of his state trial is conferred by Title 28 U.S.C.A. Section 2254. In conferring that jurisdiction upon the

federal courts, the Congress has specifically provided that this court shall *not* grant the writ unless the state prisoner (1) has exhausted remedies available in the courts of the state, *or* (2) there is no available state corrective process, *or* (3) there are circumstances rendering the state process ineffective to protect the rights of the prisoner.

North Carolina has a wholly adequate and enlightened procedure under which state prisoners may obtain from state courts a review of the constitutionality of their trial and imprisonment. N.C. G.S. Sections 15–217 to 15–222. Patton has not sought review of his second trial and sentence pursuant to the North Carolina Post-Conviction Hearing Act. Jurisdiction, if it exists, therefore depends upon "the existence of circumstances rendering such process ineffective." 28 U.S.C.A. Section 2254.

These circumstances exist by reason of prior decisions of the Supreme Court of North Carolina foreclosing in the state courts Patton's contentions that (a) he is entitled to credit for time served, and (b) that he cannot be more harshly punished at a second trial. State v. Williams, 261 N.C. 172, 134 S.E.2d 163 (1964); State v. Anderson, 262 N.C. 491, 137 S.E.2d 823 (1964); State v. White, 262 N.C. 52, 136 S.E.2d 205 (1964); State v. Slade, 264 N.C. 70, 140 S.E.2d 723 (1965).

Recently the North Carolina Supreme Court, in State v. Weaver, 264 N.C. 681, 142 S.E.2d 633 (1965), reexamined *Williams, White, Anderson,* and *Slade.* Mr. Justice Bobbitt, speaking for the court, said: "Decision on this appeal does not necessitate reconsideration of the decision in White as applied to the factual situation considered therein or to the

2. The entire order read as follows: "Petitioner was successful in vacating his first trial for armed robbery, and he seeks now to have reviewed his second trial for the same offense. The grounds alleged for relief are double jeopardy, tried in prison uniform, and right to face one's accusors. North Carolina does not have a prison uniform unless khaki

clothing can be termed such. There is nothing to the allegation with respect to double jeopardy, and the other ground is so vague as to be of no effect. "The petition is dismissed. "The Clerk will certify a copy of this Order to the petitioner and to the Attorney General of North Carolina. "This 16th day of August, 1965."

later decisions based thereon, to wit, Anderson and Slade." Weaver, supra, 142 S.E.2d at 637. Thus, those decisions were left standing. *Williams*, which had held flatly that the "contention that the judge was compelled to allow him credit for the period spent in prison before a valid trial was had is also without merit", Id., 134 S.E.2d at 165, was modified and overruled only to this extent: if the subsequent sentence plus the time already served under the invalid sentence exceed the statutory maximum provided for the offense, then the prisoner must be given credit for time served to the extent of the excess so that total time served will not be longer than the statutory maximum. Since Patton, under his present sentence, will serve not quite twenty-five years and the statutory maximum sentence is thirty years, *Weaver* avails him nothing, and *Williams* controls as to him.

At the hearing in this court, the Staff Attorney of the Attorney General's office agreed with counsel for the petitioner that further pursuit of state remedies would, in view of these decisions, be in vain as to Patton's contentions with respect to credit for time served and harsher punishment.

 Exhaustion of a state procedure to a foregone conclusion is not a pre-requisite to federal jurisdiction. It is well established that under such circumstances jurisdiction exists in the federal district court to entertain the petition and to review the constitutionality of the trial and imprisonment. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Irvin v. Dowd, 359 U.S. 394, 79 S.Ct. 825, 3 L.Ed.2d 900 (1959); Hunt v. Warden, 335 F.2d 936 (4th Cir. 1964); Evans v. Cunningham, 335 F.2d 491 (4th Cir. 1964); Thomas v. Cunningham, 335 F.2d 67 (4th Cir. 1964); Thomas v. Cunningham, 313 F.2d 934 (4th Cir. 1963); Grundler v. State of North Carolina, 283 F.2d 798 (4th Cir. 1960).

As one commentator has said: " 'Application should not be necessary if it is reasonably clear that the state will refuse to take cognizance of the claim. The timely resolution of federal rights, as well as considerations of efficiency, should outweigh what can only be termed compulsive comity.' " Sokol, A Handbook of Federal Habeas Corpus, p. 122 (The Michie Company, Charlottesville, Virginia, 1965), quoting from Note, 39 N.Y.U.L.Rev. 78, 99 (1964).

Patton's contention that his second sentence is invalidated by religious bias of the trial judge has a different posture.[3]

---

3. This contention with respect to religious bias arises out of the following colloquy between court and counsel at time of sentencing (taken verbatim from the transcript):

"Defendant: Well, to be the way I would put it, I felt like I had life anyway, and not any hopes of getting out. And a person without is—well, I don't know whether you would— I know that you couldn't understand how it would be without hope.

"The Court: No, sir. I am not without hope, because I am a Christian, are you?

"Defendant: I believe there is a God. I am not a Christian * * *

"The Court: * * * Then I can see maybe why you are without hope. (pause) Let the jury come in.

"Whereupon, the Court took the verdict of the jury as to another trial had at this Session of Court, following which:

"The Court: Mr. Patton, no one can have any hope who is without Christ.

"Defendant: If Your Honor would let me explain * * *

"The Court: * * * Yes, sir, I will.

"Defendant: I don't believe in penitentiary and jail as a Christian. I do believe there is a God, and I believe that either side—there was a thief on either side—and both of them knew they were in the presence of God. The first one stated to him, 'You

This contention has not been presented to the state courts, nor has there been any showing made that special circumstances exist which would necessarily render state process ineffective. I, therefore, refuse to consider this contention because of the failure of the petitioner to exhaust presently available state remedies.

## STARE DECISIS AND THE RELATIONSHIP BETWEEN STATE AND FEDERAL COURTS

Aside from the question of jurisdiction, no one-judge federal district court ought to lightly entertain an invitation to reject the considered judgment of his state's highest court on any question of law—constitutional or otherwise. Indeed, this court is bound to follow the interpretations of the North Carolina Supreme Court upon *state* substantive law. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). But, it is equally clearly established that, in habeas, state adjudication of federal constitutional law cannot be accepted as binding by the United States District Judge. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

"(T)he application of constitutional principles to the facts as found leave the duty of adjudication with the federal judge." Brown, supra at 507, 73 S.Ct. at 446. In Townsend v. Sain, 372 U.S. 293 at 318, 83 S.Ct. 745, at 760, 9 L.Ed. 2d 770 (1963), the Court again set forth the rule: "It is the district judge's duty to apply the applicable federal law to the state court fact findings independently. The state conclusions of law may not be given binding weight on habeas."

There are those who sincerely view with alarm the foregoing mandate to the federal district judges and who fearfully envision a disruption of proper federal-state relations when a federal district judge obeys the command to independently decide constitutional questions without according binding weight to the expressed opinion of his own state supreme court. But those who are most alarmed overlook, I think, the ordinary sequence of events [4] in such a rare [5] situation.

---

being the Christ, call your angels and get us down. You said he would give you charge over them.' And the other one said, 'Antagonize this man not. You and myself are justified in being here, and he is unjustly accused.' He said, 'Remember me when you come into your kingdom.' He said, 'This day you will dwell with me in Paradise.' Well, they both (some unintelligible) One was interested in soul salvation; the other one was only interested in getting down. That is why I say I don't believe in jail house or penitentiary religion. If I had anything to say to God, I would throw up my head and do it humbly, and not for show. Is there anything else you would like to ask me?

"The Court: No. You are the one that is telling me anything you want to. I am the one who is going to do this sentencing. Anything you want to tell me, you tell me. You have told me you didn't have any hope. I told you that every man without Christ has no hope, but I do have hope because I am a Christian.

"Defendant: If Your Honor pleases, I said I didn't have any help. All I have got is hope. I base that on the time I have already built."

4. Would not the sequence of events occur somewhat as follows?:
(1) Declaration of constitutional law by state supreme court with denial of relief to state prisoner.
(2) Writ of habeas corpus in federal district court and decision contrary to state supreme court with order commanding release of the prisoner.
(3) Appeal by the state attorney general to the appropriate circuit court of appeals.
(4) The federal district court would then, on motion, presumably stay its

As indicated in the margin, it seems to me extremely unlikely that a decision of a single district judge in conflict with his state supreme court would become effective until at least countenanced by the appropriate circuit court of appeals—if not the United States Supreme Court.

## CREDIT FOR TIME SERVED AND HARSHER SECOND SENTENCE

Under the law of North Carolina, it is plain that the fortunate recipient of a new trial may be (1) denied credit for all time served in prison under the vacated judgment and sentence imposed at the first trial, State v. White, unless given the maximum sentence at the second trial, State v. Weaver, and/or (2) be given a longer sentence than that previously imposed, State v. Williams, so long as it is within the maximum permitted by the statute. The problem is not simply a theoretical one. A recent informal survey by the Duke Law Journal [6] indicates that the benefit of time already served has been effectively denied 72 percent of the time (32 out of 44 cases) in sentences upon reconviction after a second trial in the Superior Court of North Carolina. The frequency of harsher punishment (whether by the device of refusing credit for time served, or by a longer sentence, or both) upon retrial doubtless intimidates persons held in prison under unconstitutional convictions from attempting to secure their right to a new trial.[7]

---

order until the appeal could be heard and determined.

(5) If the district judge failed to stay his own order, petition by the state attorney general to a member of the appropriate circuit court of appeals to do so.

(6) Decision by the appropriate circuit court of appeals either reversing the district judge and lining up with the state supreme court, or affirming the district court.

(7) In the latter event, petition for cert. by the state attorney general to the United States Supreme Court on the ground of conflict between a state supreme court and a circuit court of appeals.

5. As a practical matter, this is the first habeas corpus petition out of 138 considered by me in the past five years which seriously presents the problem of possible conflict of law between state and federal courts. I have granted 23 writs since March 1963. All have been granted on constitutional grounds with which the Supreme Court of North Carolina is in accord. The Attorney General of North Carolina has not appealed any of the 23 decisions granting the writ.

6. Note, Increased Sentence and Denial of Credit on Retrial Sustained under Traditional Waiver Theory, 1965 Duke L.J. 395.

7. A prisoner's fear of the hazards of a new trial is graphically stated in the following letter which came as a sequel to the issuance of the writ in Perkins v. State of North Carolina, 234 F.Supp. 333 (W.D.N.C.1964). The successful petitioner wrote me, in part: (spelling his, italics mine)

"Dear Sir:

"I am in the Mecklenburg County jail. Mr. _____ chose to re-try me as I knew he would.

\* \* \* \* \*

"Sir the other defendant in this case was set free after serving 15 months of his sentence, I have served 34 months and *now I am to be tried again and with all probility I will receive a heavier sentence then before as you know sir my sentence at the first trile was* 20 to 30 years. *I know it is usuelly the courts prosedure to give a larger sentence when a new trile is granted I guess this is to discourage Petitioners. "Your Honor, I don't want a new trile I am afraid of more time* \* \* \*

"Your Honor, I know you have tried to help me and God knows I apreceate this but *please sir don't let the state re-try me if there is any way you can prevent it.*

"Very truly yours"

In response to the foregoing letter, I wrote the petitioner, in part, as follows:

"There is nothing whatsoever that I or any other federal judge can do to prevent the State of North Carolina from re-trying you \* \* \*

\* \* \* \* \*

"If the Attorney General for the State of North Carolinia *consented,* I would then be able to vacate my Order requiring your release and/or re-trial, and I would have no objection to doing so. From previous experience with a similar request, I am extremely doubtful the State would consent. If you and your lawyer, in whom I have con-

Is this bad? There are those who earnestly insist it is not; who say that Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), is a distortion of the federal Constitution which, unfortunately, must be accepted as the law of the land but need not be embraced; that bothering with new trials in such cases simply wastes the time of overburdened criminal courts; that 99 out of 100 of those "unconstitutionally" confined are plainly guilty and will inevitably be found so in a new "constitutional" trial; that most of the prisoners who insist upon a new trial are merely trifling with the courts; that it is a good idea to discourage such "frivolous" petitions even though they rest on a constitutional basis.

Although I reject the underlying refusal to accept *Gideon*, I am not without understanding of the pragmatic viewpoint. No one who has sat a trial bench for long is unaware of the sense of frustration which accompanies the necessity of trying a case again to what an experienced judge knows, or thinks he knows, is a foregone conclusion. As stated by Justice Jackson, concurring in Brown v. Allen, 344 U.S. 443 at 537, 73 S.Ct. 397, at 425, 97 L.Ed. 469 (1953): "He who must search a haystack for a needle is likely to end up with the attitude that the needle is not worth the search." The patience of Job is scarcely enough in such a situation.

█ But, such a pragmatic approach to the administration of criminal justice has within it at least one fatal flaw: however burdensome it may be to the courts, it is not a crime in America for one to insist upon his constitutional rights, and no person may constitutionally be punished for doing so.

Punishing a prisoner for petitioning for a new trial seems to me not dissimilar to punishing him for taking an appeal. Mr. Justice Devin, in State v. Patton, 221 N.C. 117, 19 S.E.2d 142 at 144 (1942), spoke for the court with respect to the statutory right of appeal:

"This right ought not to be denied or abridged, nor should the attempt to exercise this right impose upon the defendant an additional penalty or the enlargement of his sentence."

Mr. Justice Devin then quoted with approval from Meaders v. State, 96 Ga. 299, 22 S.E. 527:

" 'The presumption is that the sentence first imposed was, in the opinion of the court, a proper punishment for the offense, and no further reason for changing it appears from the record than that stated in the bill of exceptions.' " Patton, supra Ibid.

The court thereupon vacated a harsher sentence imposed by the trial judge after defendant's expression of his intention to appeal.

In State v. White, 136 S.E.2d 205 at 207, the North Carolina Supreme Court indicated, without so holding, its adherence to the principle that due process forbids punishing a prisoner for obtaining a new trial. The court noted the absence of anything in the record to suggest that the trial judge "imposed upon defendant a heavier sentence than he received at the first trial merely because he obtained a new trial."

In Weaver, supra, 142 S.E.2d at 636, the North Carolina Supreme Court quotes with approval from Lewis v. Commonwealth, 329 Mass. 445, 108 N.E.2d 922, 35 A.L.R.2d 1277: " 'It is hardly realistic to say that nine months in the State prison amount to nothing—that since the petitioner "should not have been imprisoned as he was, he was not imprisoned at all." King v. United States, 69 App. D.C. 10, 98 F.2d 291, 293–294. Moreover, since there is no statute of limitation affecting the filing of petitions for writs of error in criminal cases, G.L. (Ter.Ed.) c. 250, § 10, the time served before the reversal of the sentence might in` some other case be so long that *glaring and in-*

---

fidence, want to attempt to get the consent of the Attorney General, you may, of course, do so, with the understanding that I would have no ob-

jection and will vacate the Order if the State consents to it."
Retrial eventuated, and the petitioner was acquitted.

*tolerable injustice would result if the time served on a first sentence should not be taken into account in imposing a second sentence.* (Italics mine.) It is not even technically correct to say that the first sentence must now be deemed to have been a nullity. It was not a nullity when it was imposed or *while it was being served.*' "

It is very difficult to reconcile the language and result of *Weaver and Patton* with what seems to be a wholly different rationale and wholly different results obtaining in State v. Williams, 261 N.C. 172, 134 S.E.2d 163 (1964), (only partially overruled by Weaver), State v. White, 262 N.C. 52, 136 S.E.2d 205 (1964), State v. Anderson, 262 N.C. 491, 137 S.E.2d 823 (1964), and State v. Slade, 264 N.C. 70, 140 S.E.2d 723 (1965).

In *Williams,* there was presented the shocking disparity of a *two* year sentence at the first trial followed by a *ten* year sentence at the second trial for the same offense. The Supreme Court of North Carolina affirmed in a per curiam opinion, stating, without citation of authority, that: "The mere fact that different judges imposed different punishment does not invalidate the sentence imposed at the second trial." Id. 134 S.E.2d at 165. It was also held, without citation of authority, that the prisoner's contention that he was entitled to "credit for the period spent in prison before a valid trial was had is also without merit." Ibid.

In *White,* the rationale of the court was that the petitioner was "deemed to have consented to a wiping out of all the consequences of the first trial," Id. 136 S.E.2d 208, including verdict, judgment, and sentence. Therefore, the court said he was not entitled, as a matter of law, to credit against the second sentence for time served under the original sentence. But, such a rationale appears to be entirely inconsistent with the language from Lewis v. Commonwealth, quoted hereinabove and approved by the court in State v. Weaver. If, as Mr. Justice Bob-

bitt said in Weaver, "the hard fact of his actual service of sentence * * * cannot be ignored," Id. 142 S.E.2d at 637, then it would seem that the rationale of *White* is destroyed. In this case, one of the consequences of the first trial is that Patton spent four years and four months in the penitentiary. *White* recognizes that a prisoner does not actually consent to having his imprisonment ignored by verbalizing that he must be *deemed* to have consented. Thus are stated legal fictions. Four years and four months of a man's liberty ought not to be wiped out by legal fiction.

Reconciling the decisions as best I can, I believe North Carolina's highest court has interpreted the Fourteenth Amendment to the United States Constitution so as to apply to the fact situation presented here, as follows:

(1) Eddie Patton may constitutionally be more harshly punished at his second trial (State v. White; State v. Williams)—provided that he may not be more harshly punished for having appealed [7a] (State v. Patton) nor for having sought a new trial. (See State v. White, supra 136 S.E.2d 207.)

(2) Because "glaring and intolerable injustice would result if the time served on the first sentence should not be taken into account in imposing a second sentence" (Weaver, supra 142 S.E.2d at 636), Eddie Patton is entitled to credit for time served, *but* he may be effectively denied credit for the four years and four months time that he served under the invalid first sentence because (except where the second sentence is for the statutory maximum) the court will presume that he was given credit for time served in the form of receiving a lessor sentence than the maximum which could have been imposed upon him. This presumption made it unnecessary in *Weaver* to reconsider *White, Anderson,* and *Slade.* The ina-

---

**7a.** This is hypothetical as to Patton. He did not appeal.

bility to make such a presumption in *Williams* (because the prisoner got the maximum sentence at the second trial) results in its being partially overruled, and the same inability accounts for the *Weaver* result. The imposition of the maximum sentence, as Mr. Justice Bobbitt put it in *Weaver*, "dispels any suggestion that the trial judge gave defendant credit for the punishment he already had received for the conduct charged in the bill of indictment. The hard fact of his actual service of sentence \* \* \* cannot be ignored" Id. 142 S.E.2d at 637—but only, apparently, in a case where he got the maximum sentence.

The effect of such a presumption— if there is one—being invoked at the appellate level is to deny Patton the right to question whether he in fact received credit for time served.

Perhaps the court has established no such presumption. But, if it has not, why does *Weaver* discuss and leave untouched *White, Anderson,* and *Slade,* and partially overrule *Williams?*

Absent such a presumption, why does *Weaver* seemingly support *White* by quoting from it: " 'There is nothing in the record to indicate whether or not Judge Latham in imposing sentence in the instant case gave or failed to give defendant credit for the time he had served under the original sentence in the first trial.' " ? Weaver, 142 S.E.2d at 637.

The distinction between *White* and *Williams* seems to be simply this: where the second trial judge has *not* given the prisoner the maximum sentence possible it will be presumed that credit was given for time served even though the second sentence is longer than the sentence at the first trial; where the trial judge *has*

given the maximum, no such presumption is possible.

▪ I do not believe the practice of trial judges is so universally efficient and/or humane that it may be conclusively presumed on federal habeas corpus that whenever the maximum sentence is not imposed due credit has in every instance been given for time served.[8]

In a plenary evidentiary hearing of the scope required by Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), I think Patton is entitled to inquire whether or not he has received credit for time served and is not barred from doing so by any state presumption that may be thought to arise out of the leniency of the second trial judge in not imposing the maximum sentence permitted by law.

The United States Supreme Court has "consistently held that state factual determinations not fairly supported by the record cannot be conclusive of federal rights." Townsend v. Sain, supra at 316, 83 S.Ct. at 758.

Thus we come to the heart of the question: the motivation of the second trial judge. Why are so many prisoners[9] more harshly punished and/or denied credit for time already served? One may strongly suspect—as does Patton[10]—that it is to discourage applications for new trials thought to be frivolous. But it is not enough to suspect.

What was the *motivation* of the experienced trial judge who effectively imposed upon Eddie Patton substantially greater punishment than he would have suffered if he had not asked for a new trial? I do not know. If a trial judge imposed a harsher sentence to discourage petitions for new trials, would he likely be candid enough to so state in the record? I have not heard of such an instance. Does that mean it has never

---

8. At the May 1966 term of the United States District Court in Asheville, I sentenced some eight or ten defendants to relatively short terms—in most instances far less then the statutory maximum —and simply forgot to give some of them credit for time spent in jail awaiting trial.

I later corrected my oversight. But a state judge cannot reduce a sentence after the term ends.

9. See Note 6, supra.

10. Note 7, supra, documents the suspicion and fear of another prisoner.

been done or never done by a sufficiently candid judge? Is it possible that a trial judge overburdened with congestion in the criminal courts might unconsciously or subconsciously be motivated by such a purpose?

In view of the heavy deference accorded the sentencing judge's determination of time to be served, it is rather surprising that so often the second sentencing judge (on a new trial) does not defer to the first judge's determination but, instead, imposes a longer effective sentence. Changing the sentence at the second trial seems inconsistent with our tradition that a judge's sentence is almost sacrosanct—even to the point of being invulnerable on appeal.[11] Such a practice also collides somewhat with the time-honored maxim that "there is no appeal from one superior court judge to another."[12]

█ Whatever may be said of the plenary power of the second trial judge to determine sentences, I think all will agree that sentences should rest on a rational and not an arbitrary basis. I do not know why Patton was more harshly sentenced at the second trial, but I presume with Mr. Justice Devin " 'that the sentence first imposed was, in the opinion of the court, a proper punishment for the offense * * *.' " State v. Patton, supra 19 S.E.2d at 144. I have carefully searched the record of the second trial and find nothing in it explanatory of the harsher punishment.[13] In State v. White, supra, the North Carolina Supreme Court said that there was nothing in the record to suggest that the second judge imposed upon defendant a heavier sentence because he obtained a new trial. The corollary of that proposition is that in this case before me there is nothing in the record to suggest any other reason for the imposition of heavier punishment.

█ To put upon the prisoner the burden of proving improper trial judge motivation is like granting him the opportunity to move Parnassus with a spoon. Not even another trial judge has the omniscience to divine his brother's motivation. Since the presumption is that the first sentence imposed was a proper punishment for the offense, it is not unreasonable to put upon the state in a Townsend-type plenary evidentiary hearing the burden of showing to the federal district judge that facts sufficiently different from those presented at the first trial were presented at the second trial which rationally support the imposition of a heavier sentence—if harsher punishment was imposed. It will not unduly burden the state to require the establishment on federal habeas of a rational predicate to support the imposition of harsher punishment, e. g., that the prisoner misled the first trial judge as to his prior criminal record, or, e. g., that he has been such a consistent troublemaker during the time spent in prison as to indicate that rehabilitation cannot be accomplished within the limitation of the first sentence.

It is not novel in the federal courts to put upon him who has information the burden of producing it. Chambers v. Hendersonville City Board of Education, 364 F.2d 189 (4th Cir. June 6, 1966), and cases cited therein.

█ This is not to say at all that the second trial judge, anymore than the

---

11. There is no appellate review of state sentences in North Carolina, nor even yet in the federal courts. On October 22, 1965, Senator Hruska of Nebraska introduced Senate Bill 2722 to provide for the appellate review of sentences imposed in criminal cases arising in the district courts of the United States.

12. Some trial judges feel very strongly that their sentences should not be changed by other trial judges. About a year ago one of the superior court judges of North Carolina aired publicly in the newspapers his deep resentment of another superior court judge modifying during the second week of a term sentences imposed by the first judge the previous week.

13. At the time of the second trial, Patton was an honor-grade prisoner. There is nothing in the record to indicate that the second trial judge was given more or different information about Patton than was available to the first trial judge.

first one, must have articulated his reasons for imposing sentence. To do so is sometimes extremely difficult, if not impossible. Trial judges have enough to do without being saddled with the burden of rationalizing every sentence on the record in open court.

Since the form of Patton's sentence may be considered either a denial of credit for time served or an imposition of harsher punishment, it is necessary to rule on both questions: they are but jaws of the same vise.

In my opinion, denial of credit at a second trial for time served while in the de facto status of state prisoner is so fundamentally unfair as to constitute a violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the Constitution. I am supported in this conclusion by Mr. Justice Bobbitt's words that "(t)he hard fact of his actual service of sentence * * * cannot be ignored." Weaver, supra 142 S.E.2d at 637. In my judgment, it cannot be ignored in any case—whether or not the maximum sentence may have been imposed at the second trial. It is held that at a second or subsequent trial credit for time served under a previous invalid sentence must be given. Cf. Dowd v. United States ex rel. Cook, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215 (1951); Cochran v. State of Kansas, 316 U.S. 255, 62 S.Ct. 1068, 86 L.Ed. 1453 (1942); see United States v. Boyce, 352 F.2d 786 (4th Cir. 1965).

On the facts of this case—where there is not one scintilla of evidence in the record to rationally support the imposition of a harsher penalty—the imposition of the same is held to be so fundamentally unfair as to violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the Constitution. See: United States v. Wiley, 278 F.2d 500 (7th Cir. 1960); United States v. Boyce, supra. Harsher punishment may constitutionally be imposed at a second trial—but there must be a reason for it, and the reason must be discernible.

Protection of the individual from arbitrary action is the very essence of due process of law. Slochower v. Board of Higher Education of City of New York, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956).

This decision may be put upon yet another basis. If it be assumed that the motivation of the second trial judge was above reproach and that the imposition of heavier punishment and/or the failure to give credit for time served was motivated by a proper concern for the protection of society and not by any purpose to punish the prisoner for having sought and obtained a new trial, the inescapable fact remains that the effect of what the second trial judge did (Patton is four years and four months worse off) is to inhibit the right to petition for new trial. This is so for the simple reason that where the record discloses no colorable reason for harsher punishment, prisoners and others will inevitably conclude—whether rightly or wrongly—that Patton was punished for obtaining a new trial.[14] It is not enough for trial judges to be rightly motivated: they must be credited for being so or the administration of justice will suffer. Regardless of the trial judge's motivation, and assuming it to be proper, I am of the opinion that the imposition of a harsher penalty (whether by denial of credit for time served or by increased sentence) without there being contained in the record any facts tending to rationally support the imposition of such a penalty inhibits the right to petition for a new trial and unconstitutionally conditions that right. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); United States ex rel. Hetenyi v. Wilkins, 348 F.2d 844 (2d Cir. 1965); People v. Henderson, 60 Cal.2d 482, 35 Cal.Rptr. 77, 386 P.2d 677 (1963).

Since the protection of society was presumably accomplished sufficiently by the imposition of the first twenty year

14. Having myself been accused of punishing a prisoner for obtaining a new trial, I have some empathy for the second trial judge. See: United States v. Boyce, 352 F.2d 786 (1965).

sentence, conditioning the right of obtaining a new trial upon fictional consent to be more harshly punished cannot be justified. There is no compelling unprotected interest of society to support a limitation of the constitutional right to seek and obtain a new trial. See: NAACP v. Alabama ex rel. Flowers, 377 U.S. 288, 84 S.Ct. 1302, 12 L.Ed.2d 325 (1964); Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); Cramp v. Board of Public Instruction, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961); Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); Speiser v. Randall, 357 U.S. 513, 78 S. Ct. 1332, 2 L.Ed.2d 1460 (1958); Slochower v. Board of Higher Education of City of New York, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); Wieman v. Updegraff, 344 U.S. 183, 192, 73 S.Ct. 215, 97 L.Ed. 216 (1952); Hannegan v. Esquire, Inc., 327 U.S. 146, 66 S.Ct. 456, 90 L.Ed. 586 (1946); Hague v. C I O, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); Frost & Frost Trucking Co. v. R. R. Comm'n, 271 U.S. 583, 46 S.Ct. 605, 70 L.Ed. 1101 (1926); Goldsmith v. United States Board of Tax Appeals, 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494 (1926); Terral v. Burke Construction Co., 257 U.S. 529, 42 S.Ct. 188, 66 L.Ed. 352 (1922); Western Union Telegraph Co. v. State of Kansas, 216 U.S. 1, 30 S. Ct. 190, 54 L.Ed. 355 (1910); Barron v. Burnside, 121 U.S. 186, 7 S.Ct. 931, 30 L.Ed. 915 (1887); see also Hale, Unconstitutional Conditions and Constitutional Rights, 35 Colum.L.Rev. 321 (1935); Merrill, Unconstitutional Conditions, 77 U.Pa.L.Rev. 879 (1929); Note, Unconstitutional Conditions, 73 Harv.L.Rev. 1595 (1960); Van Alstyne, In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant, 74 Yale L.J. 606 (1965).

In my opinion, the North Carolina Supreme Court adheres to the basic constitutional principles enunciated herein: that a prisoner may not be denied credit for time served, nor punished for obtaining a new trial.

If the result obtained in this court is different from what would obtain in a state court, it is, in my opinion, because of differing adjective law in the federal and state systems rather than fundamentally different conceptions of due process and equal protection.

Even so, the State Attorney General may consider this decision in conflict with certain decisions of the North Carolina Supreme Court. Because of that possibility, and out of respect for my own state supreme court, and on my own motion, the order I am about to enter will be stayed for a period of ninety (90) days, within which time the Attorney General of the State of North Carolina may prosecute his appeal to the Court of Appeals for the Fourth Circuit, if so advised.

An appropriate Writ of Habeas Corpus will be entered requiring that the Director of Prisons treat the commitment as if the sentence was passed October 26, 1960, rather than February 1965, so that Patton will receive credit for the actual time served by him under the invalid sentence and escape the service of any penalty more harsh than the twenty year sentence originally imposed.[15]

15. On August 20, 1966, the district court amended the form of the previous writ of habeas corpus as follows:

"The writ of habeas corpus issued herein dated 19 July, 1966, was intended to avoid the necessity of resentencing in the superior court. Whatever the purpose, it is probably erroneous as to form.

"On my own motion, pursuant to Rule 60, and prior to docketing of the appeal, the prior writ is rescinded and the following substituted in lieu thereof:

"IT IS ADJUDGED that the confinement of Eddie W. Patton is unconstitutional and unlawful for the reasons stated in the memorandum of decision dated 19 July, 1966.

"IT IS ORDERED that the said Eddie W. Patton shall be released from his confinement unless constitutionally resentenced within ninety (90) days from July 20, 1966.

"PROVIDED, however, in the event of an appeal this order is stayed for ninety (90) days from July 20, 1966."