**Lee SHEAR, Petitioner,**

**v.**

**Otto C. BOLES, Warden of the West Virginia State Penitentiary, Respondent.**

**Civ. A. No. 570–E.**

United States District Court
N. D. West Virginia.

Feb. 3, 1967.

No appearance for petitioner.

C. Donald Robertson, Atty. Gen. of W. Va., George H. Mitchell, Asst. Atty. Gen., Charleston, W. Va., for respondent.

MAXWELL, Chief Judge.

This memorandum concerns a habeas corpus petition instituted by Lee Shear, an inmate of the West Virginia Penitentiary. The circumstances leading to Shear's present incarceration are as follows.

On February 10, 1964, the Ohio County Grand Jury returned two indictments against Shear. Felony indictment 214 appears to relate to an attempted armed robbery of one George Carter during January, 1964. Felony indictment 215 similarly appears to relate to an attempted armed robbery on one Robert Rose in December, 1963.

On February 14, 1964, Shear, who was represented by two earlier court appointed attorneys, appeared before the Intermediate Court of Ohio County, West Virginia, and pleaded guilty to the charges contained in both indictments. He was, on the same day, given two concurrent ten year prison terms at the West Virginia State Penitentiary. Shear was credited for the time spent in the Ohio County Jail awaiting trial from the day of his arrest on January 4, 1964.

Shear filed a petition for habeas corpus with the West Virginia State Supreme Court of Appeals on May 22, 1964, contending, for the most part, (1) that his court appointed counsel had not adequately represented him; and (2) that his guilty pleas were coerced, mainly by the threats of his court appointed counsel and of the Judge of the Ohio County Intermediate Court. On June 8, 1964, the writ was refused.

On July 22, 1964, Shear petitioned this Court for federal habeas corpus relief, in Civil Action File No. 1389–W, again alleging, for the most part, (1) ineffective assistance of counsel, and (2) coercion of his two guilty pleas. Charles F. Paul, then Judge of this Court, appointed counsel and granted a plenary hearing, which was conducted on September 22, 1964. Judge Paul then found (1) that Shear had been afforded effective assistance

of counsel, but (2) that the pleas had been involuntary.

By order entered September 22, 1964, Judge Paul determined that Lee Shear be released from incarceration, but that the release be stayed for ten days, during which time the State might initiate proceedings for the purpose of rearresting and retrying Shear on the two indictments.

Subsequently, Shear went to jury trial on the two charges contained in each indictment. His trials were conducted in the appropriate court of Ohio County. He was represented by the same two attorneys who had earlier handled his federal habeas corpus proceedings. He was not tried before the same state trial court judge who had accepted his guilty pleas in February, 1964.

On October 28, 1964, the jury found Shear guilty of the charges precipitated by felony indictment number 214. On February 3, 1965, at a subsequent term of court, with an entirely new jury panel from that which the earlier jury had been selected, a second jury returned a guilty verdict as to the charges precipitated by felony indictment number 215. On January 11, 1965, Shear was sentenced to fifteen years at the West Virginia Penitentiary in Moundsville for the first conviction, and on February 3, 1965, he was given a consecutive fifteen year sentence at the same institution for the second felony conviction. Under West Virginia Code, § 61–2–12 (Michie 1966), armed robbery and attempted armed robbery carry a minimum of ten years confinement.

At this point, it should be noted that while the copies of the indictments contained in the court file indicate that both indictments returned against Shear were for attempted armed robbery, this Court notes that copies of the second sentencing court's two orders recite that Shear's second sentences are posited on his having been convicted of armed robbery, and not attempted armed robbery. Shear himself states in his petition that he is serving because of convictions for armed robbery, and the trial transcript of felony indictment 214 supports him in at least the one instance. The Respondent's answer to the Court's latest show cause order also indicates Shear is correct when he states that he is serving for armed robbery.

As has been indicated, this possible discrepancy is not critical as to the amount of time which Shear may be required to serve, because under West Virginia Code, § 61–2–12 (Michie 1966), both armed robbery and attempted armed robbery carry the same sentences. What is critical, of course, is whether Shear was sufficiently informed of the offenses with which he was actually charged.

Having raised this side issue, the Court now redirects its attention to the circumstances surrounding Shear's present incarceration. The record is silent as to whether Shear was credited with the time served following his initial incarceration on January 4, 1964, and up to the imposition of sentence for his first felony conviction on January 11, 1965.

If he was so credited, his two new sentences then would run approximately 29 years beyond January 11, 1965. If he was not credited, the total length of his incarceration, absent parole, would be about 31 years beyond January 4, 1964. Since the trial judge who imposed both later sentences did not indicate whether credit was to be given, this Court must assume that Shear was not given the benefit of the time he had already served. He would, of course, later be eligible for a deduction from his sentence for good conduct under West Virginia Code, § 28–5–27 (Michie 1966).

On April 30, 1965, Shear petitioned the West Virginia State Supreme Court of Appeals for habeas· corpus relief, contending (1) that his trials for the two felony charges, after Judge Paul had granted federal habeas corpus relief, constituted "double jeopardy" within the meaning of the United States Constitution; (2) that he was Constitutionally aggrieved when the State failed to reindict him before he was subjected to the two subsequent trials; and (3) that the imposition of more severe sentences the

second time in the state trial court was Constitutionally impermissible.

On July 12, 1965, the Supreme Court of West Virginia summarily denied the petition without a hearing.

On December 1, 1965, Lee Shear then petitioned this Court for federal habeas corpus relief, generally contending (1) that he had been denied his rights, as enunciated in Escobedo v. State of Illinois, 84 S.Ct. 1758, 12 L.Ed.2d 977, 378 U.S. 478 (1964); and (2) that the state trial court was not Constitutionally entitled to impose a longer prison obligation, after his two subsequent jury trials and guilty verdicts, than he had originally received after entering his two guilty pleas.

On the day Shear's petition was filed, the Court ordered the Respondent to show cause why the relief prayed for should not be granted, and on December 13, 1965, the Respondent answered, contending, in part, that Shear had not exhausted his available state remedies, as is now necessitated by the Court's ruling in Miller v. Boles, 248 F.Supp. 49 (N.D.W.Va. 1965). On January 12, 1966, therefore, the Court ordered Shear's petition be dismissed, because of the reasons suggested by the Respondent. Several weeks later the Court also denied a certificate of probable cause, but allowed Shear leave to proceed further on appeal in forma pauperis.

It was in this posture that the case was appealed to the Fourth Circuit Court of Appeals in February, 1966.

Because one of the contentions in the present petition raises novel questions regarding the rights of a successful habeas corpus applicant, on the occasion of renewed state prosecution, the Court asked that the case be remanded for further consideration. This request was granted by order dated March 9, 1966.

The present opinion is confined to the following two questions of law: (1) May a successful habeas corpus applicant, serving a state imposed sentence, on the occasion of renewed prosecution, be given a more severe sentence than that originally given; and (2) may the second sentance be imposed without giving credit for time already served under the first sentence?

Whether or not Shear was Constitutionally aggrieved by the seeming discrepancy between the indictments and the offenses for which he has been convicted is a question which this Court does not answer at this time, partly because the contention has not been raised anywhere in the record of the case, and partly because this Court requested a remand only for the specific purpose of considering the Constitutional issues underlying more severe second sentencings.

It has been traditionally accepted that a state may reinstitute criminal proceedings against a successful habeas corpus applicant. Irvin v. Dowd, 366 U.S. 717, 728–729, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); Wiman v. Argo, 308 F.2d 674 (5th Cir. 1962); Wiman v. Powell, 293 F.2d 605 (5th Cir. 1961); United States ex rel. Jones v. Nash, 264 F.2d 610 (8th Cir. 1959); United States ex rel. Almeida v. Baldi, 195 F.2d 815, 825 (fn. 30) 33 A.L.R.2d 1407 (3rd Cir. 1952); Mitchell v. Youell, 130 F.2d 880 (4th Cir. 1942); 39 C.J.S. Habeas Corpus, § 104 (1944); 25 Am.Jur. Habeas Corpus, § 157 (1940).

Recently, however, some have challenged a state's power to impose a longer sentence in a new criminal proceeding. E. g., Van Alstyne, In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant, 74 Yale L.J. 606 (1965). The main thrust of such arguments is that to require a criminal defendant to risk the chance of a more severe sentence, as a condition of exercising his Constitutional right to a fair trial, results in an unconstitutional plight. More simply stated, it is unconscionable to place a petitioner in a quandary. On one hand, he might continue to serve a sentence which is Constitutionally void. On the other hand, he might face the risk of a more severe sentence if he tries to remedy the existing Constitutional deficiency. This dilemma, it is maintained, is not consistent with due process.

But just as this Court is cognizant of one side of the argument, so too is it aware of the other. There are compelling reasons for judicial restraint by a federal habeas corpus court.

■ In the first place, some of the arguments of law cited by the opponents of more severe sentencings are not entirely dispositive. Those who argue against the imposition of a longer second sentence often refer to the Constitutional principle stated in Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), which has been made applicable to the states via the fourteenth amendment in United States ex rel. Hetenyi v. Wilkins, 348 F.2d 844 (2d Cir. 1965), cert. den. sub nom. Mancusi v. Hetenyi (No. 933), 383 U.S. 913, 86 S.Ct. 896, 15 L.Ed. 2d 667 (1966), whereby a defendant who successfully appeals a criminal conviction may not thereafter be tried and convicted of a higher offense arising out of the same factual circumstances, and which for all purposes he has already been acquitted. "The law should not, and in our judgment does not, place the defendant in such an incredible dilemma." Green v. United States, supra, 355 U.S. at 193, 78 S.Ct. at 227.

But the analogy, though valid up to a certain point, can be critically examined. In the *Green* type cases, that which is in issue is whether a defendant, in the new proceedings, should be charged again with a crime for which a jury has already chosen not to convict him. In other words, does an appellant waive his defense of double jeopardy? As Justice Black, writing for the majority in *Green*, pointed out, 355 U.S. on pages 187–188, 78 S.Ct. on page 223:

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

In the habeas corpus cases where a successful applicant is subjected to new criminal proceedings, on the other hand, there is no question of double jeopardy. See 22 C.J.S. Criminal Law, § 266 (1961). The state is not attempting to convict a successful habeas corpus applicant of a substantive offense for which he was already acquitted; he is discharged from custody, not from the penalty.

A second reason dissuading a federal habeas corpus court from interfering with a state court's imposition of a longer sentence, in renewed criminal proceedings, is the recognition and respect for the delicate federal-state relationship, examined by this Court in Miller v. Boles, supra, 248 F.Supp. 49 (N.D.W.Va.1965).

■ The third and most compelling reason for judicial restraint, however, is the fear of undermining the traditional role of the trial judge. While it may be unconscionable to place a petitioner in a dilemma, the Court, where possible, must also respect the function of the trial, i. e., sentencing, judge. Public policy so dictates.

It goes without saying that a trial judge is singularly qualified to pass sentence on a defendant. Not only has he in most instances had the benefit of pre-sentence reports, compiled by that court's competent officials, but he also has had the opportunity to observe, first hand, the demeanor of the defendant. Only the trial judge is able to take into account the defendant's personality and character. A trial court's liberation is vital in justly determining the desirability and extent of retribution or rehabilitation, as the case may be, of the defendant and in determining what type of institution defendant should in good conscience be committed (e. g., maximum or minimum security). Moreover, it is the trial judge, rather than a post conviction reviewing judge, who is most aware of the actual as well as the extenuating circumstances of the defendant's crime. Consequently, it is the trial judge who is best equipped

to consider the degree of the crime's heinousness and the amount of punishment or compassion merited. These notions, regarding the singular qualification of the trial judge in sentencing, have been carefully and studiously built into our judicial system; they obviously underlie the basic difference, and historic limitations, between the trial courts, on the one hand, and the appellate courts, on the other.

In Shear's case, where following his initial arrest, he pleaded guilty to the two charges, and, therefore, avoided the necessity for a trial, the first sentencing judge may not have had a meaningful opportunity to weigh Shear's character and to consider the other important, intangible factors which play a vital role in the determination of a sentence. Neither did the first sentencing judge have the opportunity on trial to consider fully the circumstances and details of the offense. Consequently, he was not able to give to these phases of Petitioner's case the necessary weight in the determination of Shear's sentences. It may well be that when the occasion did arise for a trial, the trial judge, i. e., the second sentencing judge, was made more aware of the serious nature of the crimes involved, than had been the first sentencing judge, who did not have the opportunity to sit through a trial where all the circumstances of the two armed robbery attempts were brought to complete focus.

In other words, Shear's second sentencing judge may have been afforded observation of factors not available to Shear's first sentencing judge. The addition of these factors may have been the reason for the harsher penalty.

What the Court says is that there are good and valid reasons which restrain a habeas corpus court from interfering with the more severe sentence imposed on a successful habeas corpus applicant. The Court, however, does not overlook that under certain circumstances a petitioner's plight cannot be ignored.

The means of arriving at this reconciliation, the Court feels, is by recognizing and accepting the proposition that there is a distinction between those cases where the second sentencing judge has acted with retributive intent, or as an inquisitor, from those cases where he has conscientiously fulfilled his role as a trial, or sentencing, judge.

This step, or a similar one, must be taken. If not, a court would have to conclude either that a successful habeas corpus applicant, subjected to a longer second sentence, has never been Constitutionally prejudiced, or that a sentencing judge is never entitled to impose a sentence in any way more severe than the first. To establish either as a stark, mechanical rule, however, is to beg the issue and do justice to neither the aggrieved petitioner nor to society and its trial courts.

Distinguishing these two types of cases, in the manner above suggested, is helpful in singling out those instances in which the petitioner has been Constitutionally aggrieved.

But to conclude that a court should distinguish these two types of cases, based on the sentencing judge's attitude, without saying more, is to leave the question half-answered, for the underlying issue then would be: "When has the sentencing judge acted in a retributive manner, or as an inquisitor, rather than as a judge?" Cf. Smartt v. Avery, 370 F.2d 788 (C.A.6, Jan. 6, 1967):

"The (Tennessee) parole board's regulation, on its face, assesses an additional year of incarceration prior to consideration for parole of any state prisoner who files a petition for writ of habeas corpus and has the same denied. The right of a state prisoner to petition for writ of habeas corpus in the federal courts on a claim that he is in custody in violation of the Constitution or laws of the United States is squarely authorized by federal law. The exercise of this right may not be denied by state law. No more may its exercise be discouraged by the withholding of a privilege that would otherwise be accorded by state law or regulation."

To answer the issue fully, a habeas corpus court needs standards or criteria, by which it may review, in an objective manner, the second sentencing court's intent.

This Court recognizes the futility of court-established standards meant to apply to abstract, theoretical situations. The major accomplishment is to articulate criteria which have clear relevance to the instant case, and to the facts of each situation.

Said in another fashion, once a court adopts the general proposition that a second sentencing judge cannot act out of retribution, or as an inquisitor, but must remain a judge, in the true sense of the word, it then must take a second step and adopt criteria by which to determine, in an objective manner, if the second sentencing judge has remained loyal to judicial objectivity. By so doing, a court attempts to fairly reconcile (1) the dilemma which a habeas corpus petitioner faces, and (2) the freedom of discretion which any trial judge must enjoy.

Another recourse for a habeas corpus court, in determining the existence or absence of retributive intent, would be to depose the sentencing judge, or subject him to a plenary hearing. The propriety behind such an act, however, is extremely tenuous, and, despite the analogous provisions of 28 U.S.C. § 2245, such a procedure, novel to the history of American jurisprudence, would be repugnant to our historic concept of federal-state relations.

Even more distasteful and unpalatable is the issue of whether a state sentencing judge could be compelled to testify, in a federal plenary hearing, as to his motives.

Appropriately, the federal habeas corpus court's forte is to apply *ad hoc* standards, and in this manner strive for an objective determination.

The Court does not now attempt to anticipate every criterion or standard conceivably applicable in determining whether a sentencing judge has stepped out of his traditional role and into that of a prosecutor, but looks only to those which are applicable to the present case.

One standard to be considered is whether the second sentence, or sentences, is, or are, more severe than the first. It can not be denied that the imposition of a more severe sentence could be an act of retribution, outside the dignity of judicial temperament, and certainly prejudicial to a petitioner. This criterion, as is so often the situation, is not singularly dispositive of an answer. The mere fact that the same judge has given a successful habeas corpus applicant a more severe sentence than that initially imposed does not necessarily imply a retributive intent on the judge's part. As has been indicated, the trial judge may have perfectly plausible reasons for his actions. It is one factor to be considered.

Two additional criteria, as apply to this case, would be whether the second sentencing judge objectively manifested a hostile attitude, either through words or actions, and whether the second sentencing judge was in any manner related to the first sentencing judge, either through family, business or close social connections, or to anyone participating in the first prosecution.

A final, and quite important, standard is whether the second sentencing judge is the same judge who had imposed the first sentence or sentences. It seems tenuous to suggest that the mere imposition of a more severe sentence, without more, amounts to a Constitutional deprivation. It is a much closer question, however, when the more severe sentence is meted out by the same judge who imposed the first sentence. It would not seem wise to discount the possibility of retribution.

To repeat, no one of these standards, in itself, is conclusory as to whether the sentencing judge had stepped out of his traditional role and into that of an inquisitor. Rather, all the criteria must be looked at *in toto* and a determination made, giving to each its due weight.

Looking at all the applicable factors in Shear's case, consequently, the Court notes, on one hand, that Shear has

been subjected to a more severe sentence. His ten year term was increased to approximately thirty. On the other hand, the Court fails to find any indication of personal hostility by the judge who imposed the two consecutive fifteen year sentences of which Shear now complains. The record makes no such disclosure. To the contrary, the trial transcript of felony indictment number 214 discloses that the trial judge was very cognizant of Shear's rights under *Escobedo* and was conscientious in providing Shear with a fair trial. The Court also fails to find any meaningful relationship between the second sentencing judge and anyone connected with Shear's first convictions. Shear has stated that the state prosecutor in his trials, after he had been awarded federal habeas corpus relief, was a brother-in-law to the first sentencing judge. He may be correct in his assertion. But this relationship suggests nothing concerning the attitude of the second sentencing judge. The second judge, to repeat, was not the same judge who had first imposed the two ten year concurrent terms.

Therefore, looking *in toto* at all the criteria applicable to Shear's case, this Court must conclude that it cannot be said, in an objective manner, that Shear's second sentencing judge, when passing sentence, had ceased to perform his function as a judge and had taken on the role of an inquisitor.

No doubt, the thought of Shear's spending an additional twenty years in prison merits sober reflection, both by this, and any other court to which Shear applies for post conviction relief. But this fact is not singularly a valid reason to impose a substitution of judgment by a habeas corpus court under the guise of Constitutional infraction.

 A sentencing court, absent retributive intent on its part, and for cause which it conscientiously deems sufficient, either has the power, or does not have the power to impose a stiffer second sentence. If it does have the power, a conclusion which this Court adopts, then it should not be abridged in its unbiased

use of that power. A post conviction review court cannot thereafter conclude that a five year additional sentence would have been Constitutionally permissible, but a twenty year sentence would be inconsistent with due process. A habeas corpus court cannot assume the function and discretion of a sentencing court. This Court is not entitled to judge the Constitutionality of Shear's second sentences merely by their length.

Of course, a sentencing court, if motivated by retribution, could not impose a stiffer second sentence without Constitutionally prejudicing a successful habeas corpus petitioner. But, as has been indicated above, it cannot here be objectively concluded that Shear's second sentences were motivated by retributive intent.

In the recent case of Patton v. North Carolina, 256 F.Supp. 225 (W.D.N.C. 1966), where the federal habeas court had to decide questions identical to the present ones, it was concluded that harsher punishment may be Constitutionally imposed at a second trial if there is a discernible reason for so doing.

For two reasons, therefore, our present holding does not conflict with *Patton.* First, there may well have been a discernible reason in this case for giving Shear a more severe sentence since the second sentencing court, as previously indicated, was able to hear testimony concerning the details of the two offenses and was able, over a meaningful period of time, to observe the petitioner's attitude and weigh all the intangible factors which constitute a trial court's determination of sentence. This the first sentencing judge was not able to do, to the same extent. To repeat, this Court cannot now say that the evidence adduced at trial, and the intangibles thus able to be considered, were not discernible reasons for imposing a more severe punishment than that initially imposed. Such action by this Court, sitting in post conviction review, would totally undermine the function of a sentencing court.

Secondly, one of the *ad hoc* standards employed by this Court in Shear's case, to weigh objectively the second sentenc-

ing judge's attitude, would necessitate a diametrically opposite result if used in *Patton*. In Shear's case, there is neither indication, nor suggestion, that the second sentencing judge manifested any personal hostility towards the petitioner, whereas in Eddie Patton's case there is a contention, apparently unrefuted, that prior to imposing sentence the second sentencing judge remarked that he "would teach these jail house lawyers." It is obvious, therefore, that in *Patton's* case there is much more reason, in arriving at an objective determination of the second sentencing judge's attitude, for concluding that the second sentencing judge had acted the role of an inquisitor.

In Patton v. North Carolina, supra, 256 F.Supp. 225, it was held that denial of credit at a second trial for time already served is a violation of the Fourteenth Amendment.

 It would appear from the record that Shear was not given credit for the time he had already served under his first sentences. Since Shear is not entitled to his immediate release, however, the traditional theory precludes habeas corpus at this time. Neither do the circumstances merit an exception to the traditional rule. See Tucker v. Peyton, 357 F.2d 115 (4th Cir. 1966). Therefore, the Court will not at this time rule upon this question.

Finally, in concluding this commentary, the Court is obliged to note that incidental to the contentions inherent in this litigation, and in a great sense overshadowing the specifics alleged in every federal petition for habeas corpus, is the vaguely hinted or insidiously suggested innuendo, or the outright declaration, that trial court judges cannot be trusted to exercise and perform the responsibilities of their positions; that our system of jurisprudence has somehow degenerated into a shabby, unashamed predator on the sensibilities, humanities and personal respectability of those who are charged with violations of society's standards of behavior.

If the past is prologue, the present is permeated with fear, unfounded, but gaining acceptance in many quarters at an alarming rate, that is unjustifiably destroying the public faith and trust necessary to the honorable administration of our system of law and order.

Apart from the principles and legalities that determine the issues, this Court does not subscribe to the theory that the trial courts of our land are staffed with men who are flippant and frivolous to the study and application of the science of law. This Court does subscribe to the belief that the state trial courts of our land are genuinely concerned; recognize the need of wisdom and deliberation in our court system; and constantly strive to obtain objective, unprejudiced understanding of the individuals brought before them. This Court believes that the state trial courts are conscientious, fair, considerate and cooperative in endeavoring to establish and maintain the proper balance between offending individuals and an offended society.

Undoubtedly there is no profession in today's complex society, and this has been true throughout history, that has dared to exercise more independence of thought and action than those of the law profession; that have dared to stand boldly and unafraid, to voice their convictions and beliefs, regardless of the prevailing notions and emotional riptides of the time.

The courage and strength of the membership of the legal community in today's Nation, often characterized as cowardly, "afraid to get involved" society, is a refreshing and wholesome joinder with the strength of character that has given us the system of law and order we enjoy today.

This Court can never abandon its belief that every court, federal, state and local, holds a deep and abiding sense of personal and professional pride, justified by its work product, of assisting the helpless and aiding the oppressed, while at the same time, and compatible with the foregoing, maintaining a healthy and vigorous respect for the obligation to maintain a government by the governed

and to preserve a nation gifted with as well as dedicated to a rule of law.

Blackstone (Commentaries Bk. 1, 69) in speaking of judges said "They are the depositories of the laws, the living oracles, who must decide in all cases of doubt, and who are bound by an oath to decide according to the law of the land." Assuredly, we recognize that public security against an abuse of such responsibility rests on the responsibility of the individual empowered with the authority and who is bound by the obligation.

As in the instant case, when a judge imposes a longer sentence after a new trial, he leaves himself open to a charge of prejudice and injustice. What Holmes called "the appearance of justice" has not been preserved. The easy path for the sentencing judge, in a second instance, would be to follow the initial sentence. In some cases the imposition of a more severe sentence requires a special form of judicial courage. The charges against the trial judge, which he knows will come, are obvious. His sole defense to such charges is his personal integrity as a jurist and as a person. Professionally, ethically, and perhaps to the detriment of society, justice and our system of law, the accused judge stands mute to the charges and clamor of evil and wrongdoing. If he has decided in good conscience that this is the appropriate retribution owing to society, we must realize that he is duty bound to exercise that judgment. There is no reason why the first or initial sentence should be considered any more sacrosanct than the second or succeeding sentence. To hold otherwise, would be to say that the judicial branch of our government is not to be trusted with the discretion that the legislative bodies have seen fit to repose for management in the courts.

The late Chief Justice Bolitha J. Laws of the United States District Court for the District of Columbia once noted:

"The sentencing of the convicted offender demands of the trial judge the best that he has in wisdom, knowledge, and insight, as a jurist and as a human being. Difficult as it is to do, he must constantly weigh in the balance a future course of life of the individual before him with his judicial responsibility for the protection of the community."

Writing recently in 45 Nebraska Law Review 499, 509 (1966), Chief Judge Theodore Levin, of the United States District Court for the Eastern District of Michigan, concluded his remarks with this statement:

"Courts, in the sentencing of convicted persons, must be something other than mechanical instruments of punishment. The symbolic blindfold on the statute of Justice was never intended to obscure from the sight of the judge an understanding of the human being who stands before him awaiting judgment. The quality of sentencing must concern us no less than the quality of the entire judicial process which precedes it."

The judge's responsibility in sentencing an individual is a difficult, arduous and exacting responsibility. There can be no simple or rigid formula imposed upon him in carrying out the sentencing function, which is critical to the fulfillment of justice as well as the prevention of crime.

It should be noted that more and more trial court judges are recognizing that the sentencing of offenders who come before them is a most difficult assignment. More and more the trial court judges are attending meetings and conferences to discuss sentencing procedures to find new and better ways to discharge their sentencing responsibilities. This is another indication of the dedication and conviction which historically attends the discharge of responsibilities by the membership of the legal profession.

The threat of harsher sentences on successful habeas corpus applicants certainly can become a tool by which to prevent state or federal prisoners from seeking redress of Constitutional deprivations previously suffered. It also places would-be petitioners in a dilemma. But the need for preserving the traditional role of the sentencing judge, who has acted in a conscientious manner, demands

that each case, wherein a successful habeas corpus applicant has received a more severe sentence in new criminal proceedings, be considered on an *ad hoc* basis.

Having done so in this case, and in the manner above indicated, the Court is of the opinion that Shear was not Constitutionally aggrieved. Therefore, an order will be entered, denying the writ of habeas corpus.