Argued April 4, reversed with instructions June 21, 1967

STATE OF OREGON, *Respondent, v.*
LEO TURNER, JR., *Appellant.*
429 P. 2d 565

Lawrence A. Aschenbrenner, Public Defender, Salem, argued the cause and filed a brief for appellant.

Jacob B. Tanzer, Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

Before PERRY, Chief Justice, and MCALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

DENECKE, J.

The defendant was convicted of assault with intent to rob and was sentenced to five years' imprisonment. He appealed and his conviction was reversed for constitutional error committed at his trial. *State v. Turner,* 241 Or 105, 404 P2d 187 (1965). He was retried before a different judge, convicted and sentenced to seven years' imprisonment with credit allowed for two years already served on the former sentence.

Defendant appeals solely upon the ground that the second trial court could not constitutionally impose a sentence longer than one amounting to five years' imprisonment with credit for the two years served.

*State v. Froembling,* 237 Or 616, 391 P2d 390, cert den 379 US 937, 85 S Ct 339, 13 L ed2d 347 (1964), and *Froembling v. Gladden,* 244 Or 314, 417 P2d 1020 (1966), concern this general problem. In February,

1958, Froembling was sentenced to life and to three terms of ten years each. All sentences were to run concurrently. On post-conviction the life sentence was held void. In May, 1963, Froembling was re-sentenced to 15 years, such period to commence after the three 10-year concurrent sentences were served. No credit on the 15-year sentence was given for the five years served.

The same judge imposed both sentences. The trial court stated that if it had known at the original sentencing that a life sentence could not be imposed it would have ordered that the sentences would run consecutively.

The essence of our decision is: "Here the error in the original proceeding consisted of imposing the wrong sentence for the crime charged. When that is the case the trial judge must change the sentence to correct the error and he must exercise his discretion anew in arriving at what he considers an appropriate sentence." 237 Or at 619.

We observed, however: "We recognize that there are circumstances in which it would be mandatory upon the trial court in resentencing to give credit for time served, but this is not such a case." 237 Or at 619.

In the post-conviction proceeding Froembling contended that the resentencing violated his right not to be placed in double jeopardy. We held: "When, on resentencing, defendant receives no greater sentence than he could have been subjected to had there been no error in the original sentence, he has not been placed in double jeopardy." 244 Or at 316, 417 P2d at 1021-1022.

The *Froembling* cases are distinguishable both upon their facts and their rationale. The sentencing court upon resentencing did not reassess the nature

of the sentence appropriate for the case. It remained of the mind that a life sentence was approriate; however, when it found that life was unauthorized, the court gave as long a sentence as was authorized.

Froembling was not prejudiced by his post-conviction petition or appeals. As a result of such proceedings he reduced the time he must serve to a total of 25 years rather than life. Forty-five years is apparently what the trial court would have originally sentenced if it had known that a life sentence was unauthorized.

Likewise, our early decision in *State v. Steeves,* 29 Or 85, 43 P 947 (1896), concerned a problem similar to the present question but not the precise question. There, the defendant was indicted for first-degree murder and found guilty of manslaughter. We held: "[A] conviction of a lower degree necessarily included within an indictment charging the commission of a greater crime, operates as an acquittal of all the degrees above it, and that a new trial, in the absence of a statute declaring the effect of a reversal of the judgment, must be confined to a retrial of the charge upon which the accused was convicted, or of a lower degree." 29 Or at 111.

The discussion in that case commences with the quotation of Oregon's constitutional provision prohibiting double jeopardy (29 Or at 107), but it is uncertain whether the decision is based upon constitutional grounds or establishes a rule of criminal practice. The above quotation states the rule, "in the absence of a statute." That latter phrase indicates the basis of the decision is not constitutional.

*Green v. United States,* 355 US 184, 78 S Ct 221, 2 L ed2d 199 (1957), 61 ALR2d 1119, was an appeal from a federal conviction and, in essence, applied the

same principle as this court did in *State v. Steeves, supra* (29 Or 85). *Green v. United States, supra,* however, was decided squarely upon the federal constitutional prohibition of double jeopardy.

These two later decisions, as we above stated, are not controlling as their rationale is based upon two offenses, carrying two different maximum punishments, whereas, the present problem relates to only one offense with two different sentences imposed.

We are also of the opinion that the decisions from other jurisdictions in which a defendant was convicted of murder, given life, granted a new trial, again convicted, and then sentenced to death, are also not completely analogous. Oregon has not had a case involving such facts. *People v. Henderson,* 60 Cal2d 482, 35 Cal Rptr 77, 386 P2d 677 (1963), does have such facts.

The California court held the defendant could not be sentenced to death upon retrial because such procedure would be in violation of California's constitutional prohibition of double jeopardy. The court believed the reasoning of *Green v. United States, supra,* was applicable and persuasive. Mr. Justice Traynor stated: "It is immaterial to the basic purpose of the constitutional provision against double jeopardy whether the Legislature divides a crime into different degrees carrying different punishments or allows the court or jury to fix different punishments for the same crime." 386 P2d at 686.

The California court further reasoned: "A defendant's right to appeal from an erroneous judgment is unreasonably impaired when he is required to risk his life to invoke that right. Since the state has no interest in preserving erroneous judgments, it has no interest in foreclosing appeals therefrom by imposing unrea-

sonable conditions on the right to appeal." 386 P2d at 686.

The dissent points out that a majority of the jurisdictions deciding this question has held to the contrary. 386 P2d at 686. Annotation, 12 ALR3d 978, "Propriety of Increased Punishment on New Trial for Same Offense" (1967).

The application of the principle of double jeopardy to the circumstances present in *People v. Henderson,* supra (60 Cal2d 482), appears to us to be questionable.[1]

The recent decision of *Cichos v. State of Indiana,* 385 US 76, 87 S Ct 271, 17 L ed2d 175 (1966), seems to have determined in a noncapital case that a second harsher sentence is not a violation of the double jeopardy provision of the federal constitution.

In that case the defendant was initially convicted under a two-count affidavit charging reckless homicide and involuntary manslaughter. The verdict recited only that the defendant was found guilty of reckless homicide. The defendant was sentenced to one to five years and a $500 fine. The State Supreme Court reversed and granted a new trial. The defendant was retried on both counts and the jury returned the same form of verdict as it had on the first trial. The defendant was sentenced again to one to five years but was only assessed a $100 fine.

Under Indiana law both reckless homicide and involuntary manslaughter require the same elements of proof. The penalty for the former is one to five years and for the latter, two to twenty-one years. A conviction for one bars a prosecution for the other.

---

[1] The New Jersey court reached the same result in State v. Wolf, 46 NJ 301, 216 A2d 586 (1966), as did California, but upon a procedural rather than a constitutional basis.

The jury is instructed that the defendant can be found guilty on only one count. Reckless homicide is not a lesser included offense of involuntary manslaughter. This is a situation of one offense with two different penalties. Under Indiana law the jury's silence on the involuntary manslaughter count is not considered an acquittal on such count; rather it is the jury's determination that the defendant should be assessed the lesser penalty.

The majority held that this procedure did not place the defendant twice in jeopardy. The majority does not discuss the question of lack of prejudice.

The crux of the decision is that the defendant could be retried on both counts. The inescapable inference seems to be that the defendant could be found guilty at the second trial and given the maximum of 21 years and that this would not violate the double jeopardy provision of the federal constitution.

The majority does not discuss the effect of the procedure upon one's right to appeal. The dissent opined that the procedure violated the Due Process Clause by imposing an unreasonable limitation upon the right of appeal.

A numerical majority of the decisions from other jurisdictions supports the state's position in this case that upon resentencing the sentencing court can assess any sentence it believes appropriate within the maximum set by statute and the previous sentence is no limitation upon that authority. Annotation, 12 ALR3d 978, 980, supra.

The cornerstone decision so holding is *Stroud v. United States,* 251 US 15, 40 S Ct 50, 64 L ed 103 (1919), holding that such procedure does not violate the federal constitutional ban on double jeopardy.

The court approved a death sentence in a federal prosecution, whereas the sentence on the first conviction was for life. The court reasoned: "The protection afforded by the Constitution is against a second trial for the same offense." 251 US at 18. Apparently, as a further ground for its decision, the court observed: "[T]hus the plaintiff in error himself invoked the action of the court which resulted in a further trial." 251 US at 18. These views were reaffirmed 40 years later in *Stroud v. United States,* 283 F2d 137 (10th Cir 1960).

The majority in *People v. Henderson,* supra (60 Cal2d 482), believed *Green v. United States,* supra (355 US 184), impliedly overruled *Stroud v. United States,* supra (251 US 15); however, the author of the majority opinion in *Green v. United States,* supra, wrote: "*Stroud v. United States* [citation], is clearly distinguishable." 355 US at 194-195, n15.

*Cichos v. State of Indiana,* supra (17 L ed2d 175), does not cite *Stroud v. United States,* supra (251 US 15), perhaps because it concerned a state prosecution, whereas Stroud was convicted in a federal court.

Some of the decisions imposing no limitation upon the second sentencing advance no supporting reasons. *Sanders v. State,* 239 Miss 874, 125 S2d 923, 85 ALR2d 481 (1961); *Hicks v. Commonwealth,* 345 Mass 89, 185 NE2d 739 (1962).

Other like decisions reason: "Even if defendant had in the first instance been convicted of a lesser degree of the crime charged, when he sought and obtained a new trial he took the risk of conviction of the crime charged in the bill. [Citation] The mere fact that different judges imposed different punishment does not invalidate the sentence imposed at the second trial." *State v. Williams,* 261 NC 172, 134 SE2d

163, 165 (1964), partially overruled in *State v. Weaver,* 264 NC 681, 142 SE2d 633, 637 (1965) ; *State v. Squires,* 248 SC 239, 149 SE2d 601, 605 (1966). As previously stated, we early rejected this principle in *State v. Steeves,* supra (29 Or 85).

Other courts have reasoned that the first sentence was a "nullity" as it was "void" and, therefore, the defendant was in the same position as though he had never been sentenced at all. See cases cited in Whalen, *Resentence Without Credit For Time Served; Unequal Protection of the Laws,* 35 Minn L Rev 239, 240–243 (1951). *State v. King,* 180 Neb 631, 144 NW2d 438 (1966). *State v. Squires,* supra (149 SE2d 601). Another way of expressing such reasoning is to state that the first sentence was a "nullity" and, therefore, the second sentence is imposed in a "trial de novo." *Hobbs v. State,* 231 Md 533, 535, 191 A2d 238 (1963).

In *Shear v. Boles,* 263 F Supp 855 (ND W Va 1967), the court denied a writ of habeas corpus to a state prisoner who had received a longer sentence upon retrial. The court stated that under certain circumstances a longer sentence would not be permissible. It reasoned that the most important reason for refraining from limiting the second sentencing judge was a fear of undermining the traditional role of the trial judge. Also, the court observed that a second sentencing judge may have been afforded observation of factors not available to the first sentencing judge.

The trend in the last year, however, with one exception, is contrary to *Shear v. Boles,* supra (263 F Supp 855).

In *Marano v. United States,* 374 F2d 583 (1st Cir 1967), the court expressly refused to follow the reasoning of *Shear v. Boles,* supra. It did state that if there were circumstances arising subsequent to the first

sentencing that would support the imposition of a longer sentence there would be no objection. The court believed, however, that merely because the second sentencing court was of the view that a harsher penalty was in order, or that at the second trial more damaging evidence was introduced, are not legitimate grounds for permitting a more severe sentence.

The third circuit expressly refused to follow *Marano v. United States,* supra (374 F2d 583); *United States ex rel Starner v. Russell,* 35 US Law Week 2706, 378 F2d 808 (3d Cir 1967). That court reasoned that when a defendant "elects to have his case retried before a jury he takes a chance after conviction on the trial judge's discretion in sentencing him."

California has extended the reasoning of *People v. Henderson,* supra (60 Cal2d 482), to noncapital cases.

In *People v. Nanga-Parbet Ali,* 66 Cal2d 277, 57 Cal Rptr 348, 424 P2d 932 (1967), the court held:

> "Where a defendant has been sentenced to concurrent terms and then upon a retrial is sentenced to consecutive terms for the same offenses, his punishment has been increased by indirect means. The reasoning which prevents an increase by direct means would seem to be applicable in such a situation, as a defendant should not be required to risk being given greater punishment on a retrial for the privilege of exercising his right of appeal." 424 P2d at 935.

In *Patton v. State of North Carolina,* 256 F Supp 225 (WD NC 1966), the district court held that harsher punishment may be constitutionally imposed after a second trial but there must be a discernible reason for such an increase in sentence. If there is not such a discernible reason the imposition violates the equal protection and due process clauses of the federal constitution. The court noted that in North Carolina after

defendants had obtained new trials because of a lack of constitutional protections at their first trials, and the defendants were again found guilty, substantially harsher sentences were the rule.

In *Gainey v. Turner*, 266 F Supp 95 (ED NC 1967), the *Patton* case was followed. The court said that regardless of whether the second sentence was to punish an offender for his successful appeal, to protect the state from too lenient an initial sentnece, or because of the vagaries of a different judge, in all these instances a second more severe sentence would be set aside. The burden of justifying a more severe sentence was placed upon the state.

The Tentative Draft of "Standards Relating to Post-Conviction Remedies" recommended by the Advisory Committee on Sentencing and Review of the American Bar Association Project on Minimum Standards for Criminal Justice contains the following proposed standards:

> "6.3 Sentence on reprosecution of successful applicants; credit for time served.
> "(a) Where prosecution is initiated or resumed against an applicant who has successfully sought post-conviction relief and a conviction is obtained, or where a sentence has been set aside as the result of a successful application for post-conviction relief and the defendant is to be re-sentenced, the sentencing court should not be empowered to impose a more severe penalty than that originally imposed.
> "(b) Credit should be given towards service of the minimum and maximum term of any new prison sentence for time served under a sentence which has been successfully challenged in a post-conviction proceeding." (Tent Draft 1967, at 94-95)

In determining how we are to decide this issue we reason as we do in other questions of this general

nature. We weigh the public interest in being protected from persons found guilty of crimes and the individual's interest in exercising rights guaranteed him by constitution, statute or judicial decision.

Some of the reasons advanced for permitting the second sentencing to be without limitation serve a legitimate public interest, others do not.

The reason given that the first trial sentence was "void", a "nullity," and, therefore, should be regarded as never happening, in our opinion, has no validity. We already have accorded significance to the first trial. We early held in *Steeves v. State*, supra (29 Or 85), in which the defendant was found guilty of a lesser included offense, successfully appealed, and was retried, that the first trial resulted in the defendant being put in jeopardy for the offense charged.

Likewise, we cannot find any merit in the argument that the defendant "asked" for his second sentence as the defendant was the person who instituted the appeal or sought post-conviction relief. In *Short v. United States*, 120 US App DC 165, 344 F2d 550, 553 (1965), the court said of a similar argument: "The contrary view, that the 'defendant in seeking and obtaining a new trial must be deemed to have consented to a wiping out of all the consequences of the first trial,' falls into 'the vein of The Mikado.' "

■ Some of the courts have refused to limit the second sentencing court because the sentencing court traditionally is granted almost complete discretion, within the statutory limits, in determining the appropriate sentence. We do subscribe to the principle that the trial court should be given wide latitude in fixing the sentencing; however, in this class of case one trial court has already exercised its discretion and best judgment and imposed a sentence. Under ordinary

circumstances there is no reason to conclude that the public interest is better served by the second sentence than the first.

On the side of the individual's rights, it seems quite obvious that the possibility of a more severe sentence in the event of a successful appeal or post-conviction proceeding and a subsequent new trial and conviction would "chill" a defendant's desire to correct an erroneously conducted initial trial. It also seems obvious that the public has no interest in foreclosing the correction of an erroneously conducted trial. Van Alstyne, *In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant*, 74 Yale L J 606, 613 (1965).

██ We believe that the interest of the public and the individual can best be served by the following rule: After an appeal or post-conviction proceeding has resulted in the ordering of a retrial for errors other than an erroneous sentence, such as in the *Froembling* cases, and the defendant has again been convicted, no harsher sentence can be given than that initially imposed. If the initial sentence was incarceration, the defendant subsequently cannot be sentenced to any longer term than the time still to be served upon his initial sentence.

On occasion the second sentencing court is presented information which was not available to the first sentencing court, either of circumstances which occurred subsequent to the first sentencing or of circumstances not known at the time of the first sentencing. This information might be such as would have caused the first sentencing court, if it had knowledge of such information, to have imposed a more severe sentence. It is in the public interest to permit a court

to assess its sentence upon the most complete and current information.

On the other hand, permitting a harsher sentence under such circumstances raises difficulties in judicial administration. It would require a court reviewing the propriety of the second sentence to make a subjective determination whether the new information justified and was in fact the motive for the more severe sentence.

The Advisory Committee commented upon this problem as follows: "Even though new facts may be brought to light which might occasionally warrant a heavier sentence, the Advisory Committee believes it is preferable to establish a standard that is prophylactic in effect, and easily administered, whereby sentencing judges are not given power to increase a sentence when an applicant has exercised his right to seek a post-conviction remedy."[2] (Tent Draft, supra, at 96)

Usually in this type of case the first conviction is after a not-guilty plea and a trial and all the facts should be brought out and the chance of new information is slight. If the newly found fact is a prior conviction which for some reason was not known at the time of the initial sentencing, the defendant may be subject to an enhanced penalty under the habitual criminal statutes. If the new facts consist of misconduct in prison while serving the first sentence or other misconduct subsequent to the first trial, such misconduct will in effect bring about a more severe sentence by causing a loss of "good time" if committed in prison or will amount to another crime, if occurring

---

[2] The Advisory Committee's report only concerns post-conviction remedies; however, the same restrictions on sentencing should apply when relief is obtained upon appeal.

inside or outside prison, and, therefore, could result in a separate sentence.

■ We believe the argument for efficient judicial administration outweighs the possible advantages of permitting more severe sentences upon the basis of new information and, therefore, we follow the Advisory Committee's tentative recommendation.

There also remains the issue of whether the rule proposed should be grounded upon the due process or double jeopardy provisions of the state or federal constitutions or whether it should be grounded upon the statutes or the common law.

■ We do not find it necessary to decide the constitutional issues as we conclude that when the state grants a criminal appeal as a matter of right to one convicted of a crime, as it has, our procedural policy should be not to limit that right by requiring the defendant to risk a more severe sentence in order to exercise that right of appeal. ORS 138.020.

This was the approach advanced by the New Jersey court in *State v. Wolf,* supra. That court held:

> "In the appeal before us we do not find it necessary to decide whether the double jeopardy clauses of either the Federal or the State Constitutions are applicable. Nor need we concern ourselves with the question whether the reach of the due process clause of the Fourteenth Amendment of the Federal Constitution provides a bar against imposition of the death penalty on Wolf's retrial. Our decision finds its base in procedural policies which are of the essence of the administration of criminal justice.
>
> " * * * * * *
>
> " * * * Consequently, we hold that since the State has granted the universal right of appeal, standards or procedural fairness forbid limiting

the right by requiring the defendant to barter with his life for the opportunity of exercising it." 46 NJ at 308-309.⑧

Reversed with instructions to resentence is accordance with this opinion.

MCALLISTER, J., concurs in the result.

PERRY, C. J., dissents.

---

⑧ The question has been raised whether our holding is a limitation upon circuit courts hearing appeals from district, justice and municipal courts. That issue is not before us and we, therefore, make no decision upon it. We observe, however, that in such appeals the appellant does not appeal upon the ground that the lower court erred. ORS 157.065, 157.080. The appeal is tried de novo by the circuit court without a transcript of the proceedings.