Argued and submitted March 2, affirmed July 7, 1999

## STATE OF OREGON,
*Respondent,*

*v.*

## GREGORY PAUL WILSON,
*Appellant.*

## (92-08-34764; CA A100673)

985 P2d 840

Richard L. Wolf argued the cause and filed the brief for appellant.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Deits, Chief Judge, and Haselton, Judge.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

In this criminal proceeding, defendant appeals from sentences imposed on two counts of first-degree kidnapping and one count of third-degree assault. Those sentences were imposed after defendant successfully appealed related aggravated murder and murder convictions. *State v. Wilson*, 323 Or 498, 918 P2d 826 (1996), *cert den* 519 US 1065 (1997). We affirm.

The procedural posture of this case is complex and must be explained in some detail. In 1992, defendant was indicted on nine counts of aggravated murder, one count of murder, one count of second-degree kidnapping, two counts of first-degree kidnapping, one count of third-degree assault, and one count of second-degree abuse of a corpse. Those charges stemmed from defendant's alleged involvement in the abduction and murder of Misty Largo. The facts underlying those charges are set out in *State v. Charboneau*, 323 Or 38, 913 P2d 308 (1996). Defendant was convicted on those charges and was sentenced to death on the aggravated murder convictions. At sentencing, the state suggested, and the trial court agreed, that the conviction for second-degree kidnapping merged into the two convictions for first-degree kidnapping and that the two convictions for first-degree kidnapping merged into two of the convictions for aggravated murder. The court further determined that the conviction for third-degree assault merged into another of the aggravated murder convictions.

In *State v. Wilson*, on automatic and direct review, the Oregon Supreme Court determined that an evidentiary error required reversal of defendant's murder and aggravated murder convictions but that the erroneously admitted evidence "did not contribute to defendant's convictions for kidnapping, assault, and abuse of a corpse." 323 Or at 504. The court's disposition of the case was as follows: "The judgment of conviction is reversed with respect to the charges of aggravated murder and murder. The judgment of conviction is otherwise affirmed. The case is remanded to the circuit court for further proceedings." *Id.* at 519.

The present appeal stems from some of the "further proceedings" that occurred in the circuit court after remand. The first question before the trial court on remand concerned

the scope of the remand: With the convictions on underlying felonies that formed a part of the basis for the aggravated murder charges affirmed, what issues were to be retried? Following the guidance provided by *State v. Boots*, 315 Or 572, 848 P2d 76, *cert den* 510 US 1013 (1993), the court determined that a limited, retrial on the murder and aggravated murder charges would not involve relitigation of the underlying felonies for which defendant's convictions had been affirmed, even though those felonies provided the underlying bases for some of the aggravated murder charges. At about that point in the proceedings, defendant expressed an interest in seeking post-conviction relief on the convictions for kidnapping and assault and in delaying his retrial on the murder and aggravated murder charges until his post-conviction claim had been fully litigated. For reasons that are unclear to us, the state agreed to this procedure, and no further actions were taken to retry defendant for murder and aggravated murder. The state eventually determined that it would be appropriate to have defendant sentenced on the convictions that had been affirmed. The present appeal is the result of that sentencing.[1]

At sentencing, the court heard testimony from Dr. Frank Colistro, who indicated that, in his professional opinion, defendant suffered from a severe personality disorder and was at risk of seriously endangering the life and safety of others. The court again merged the conviction for second-degree kidnapping with the convictions for first-degree kidnapping. On one of the first-degree kidnapping convictions, the court imposed an upward departure sentence under the sentencing guidelines of 140 months. On the other first-degree kidnapping conviction, the court imposed a concurrent indeterminate dangerous offender sentence of 30 years pursuant to ORS 161.725. On the third-degree assault conviction, the court imposed a concurrent sentence of 18 months under the sentencing guidelines.

Defendant appeals from those sentences, raising numerous assignments of error. We review for errors of law.

---

[1] The record before us does not reflect whether the parties intend to further delay the post-conviction proceeding and the retrial on the murder and aggravated murder charges pending resolution of this appeal.

ORS 138.220; ORS 138.222. In several of his assignments of error, defendant contends that the trial court erred in sentencing him on the kidnapping and assault convictions because such sentencing exceeded the scope of the remand in *Wilson*, 323 Or at 519, and because sentencing on convictions that previously had been merged with other convictions constitutes a harsher sentence than was originally imposed, in violation of the rule of law announced in *State v. Turner*, 247 Or 301, 313, 429 P2d 565 (1967). Defendant argues that such sentencing was not permitted because the Oregon Supreme Court's remand did not specify that the "further proceedings" for which it was remanding could include sentencing on the convictions that it had affirmed. Defendant argues:

> "An election by the district attorney to not proceed on the greater offenses which the [affirmed convictions] merged into, *may* free up the circuit court to impose final sentence on [those convictions]. An acquittal on the greater offenses of the merged counts *may* also create the authority to impose sentence again on [those convictions]." (Emphasis defendant's.)

However, defendant argues that, here, these felonies may not now be sentenced separately from any subsequent reprosecution on the murder and aggravated murder charges because "there is no mechanism available to the trial court, or the appellate court, to 'remerge'" the kidnapping and assault convictions into later aggravated murder convictions should such convictions occur.

■    Defendant asserts that the trial court exceeded the scope of the remand because, in the previous appeal, the state did not cross-appeal the trial court's determination that the convictions for kidnapping and assault merged with the aggravated murder convictions. As noted above, it was the state's position at the original sentencing that those convictions did merge with the aggravated murder convictions, and the state has never taken a position to the contrary. *See, e.g., State v. Tucker*, 315 Or 321, 331, 845 P2d 904 (1993) (convictions for crimes that provided underlying basis for aggravated murder convictions merged with aggravated murder convictions). The state could hardly be expected to cross-appeal on the ground that the trial court *correctly* merged the convictions. However, the fact that the merger was correct at

the time it occurred does not mean that "further proceedings" in light of the reversal of the aggravated murder convictions are prohibited. We do not agree that the trial court exceeded the scope of the remand or that the state somehow waived the right to have defendant sentenced on those convictions by taking the position that it did in the previous proceeding. The issue did not exist until the Oregon Supreme Court reversed defendant's aggravated murder convictions and affirmed the convictions for kidnapping and assault. Nothing in the wording of the Supreme Court's remand indicated that the lower court could not proceed to sentence defendant on those convictions that had been affirmed but for which no sentence had been imposed due to the earlier merger. The trial court did not exceed the scope of the Supreme Court's remand in sentencing defendant on those convictions that had been affirmed. *See State v. Walton*, 134 Or App 66, 70-71, 894 P2d 1212, *rev den* 321 Or 429 (1995) (under similar circumstances, trial court "properly imposed a sentence on the convictions that the Supreme Court affirmed").

■■ We express no opinion on whether separately sentencing those offenses that previously had merged with aggravated murder convictions based on the same criminal conduct may lead to a potential sentencing problem in the future. Defendant appears to be correct that, should he be convicted again on the aggravated murder charges, there is no procedural mechanism for "re-merging" the present sentences into whatever sentence he receives on the aggravated murder convictions, which could implicate the rule of law from *Turner* that a defendant generally should not be subject to harsher penalties for the same crimes as a result of a successful appeal. Defendant's argument on this question, however, is not ripe and will not be ripe unless and until he is again convicted of murder or aggravated murder. The error, if any, is not one that has occurred but is one that may occur, depending on future events.

The same sort of ripeness problem affects defendant's next assignment of error: "That the trial court is denying Mr. Wilson a speedy retrial of his aggravated murder charges by imposing sentences upon him 15 months after the Supreme Court remanded his case and 4 months after he had commenced his post conviction relief case on the same

counts." Leaving aside the fact that it was defendant himself who sought these delays in his retrial so he could seek postconviction relief, we must point out that whatever merits this assignment of error may have are undoubtedly connected to his retrial on murder and aggravated murder charges, should such a retrial occur, and have nothing to do with his sentencing on convictions that already have been tried and affirmed. Defendant's speedy trial arguments must be made in the context of an appeal from any murder or aggravated murder convictions that may occur at a later date.

■ Defendant next argues that, under *DeAngelo v. Schiedler*, 306 Or 91, 757 P2d 1355 (1988), he was effectively denied the right to allocute at sentencing. The trial court gave the defendant the opportunity to allocute at sentencing, but defense counsel indicated that defendant did not wish to allocute because of the pending murder and aggravated murder charges. Defendant argues that, because there remained pending charges related to the crimes of which he stood convicted, he was impermissibly forced to choose between his right to remain silent and his right to allocute at sentencing.

Defendant's situation is not unique. Undoubtedly many criminal defendants must make difficult decisions about whether allocution at sentencing will ultimately prove to be helpful or harmful. That scarcely leads to a conclusion that a defendant's constitutional rights are violated when a trial court asks a defendant if he or she wishes to say anything at sentencing. Defendant argues, in essence, that his constitutional rights are standing in the way of his constitutional rights. The inescapable fact that defendant may not simultaneously exercise his constitutional right to say something and his constitutional right to say nothing hardly provides a reason to conclude that he may not be sentenced for the crimes of which he stands convicted. Defendant's argument does not merit further discussion.

■ Defendant also argues that the trial court erred in imposing a dangerous offender sentence on one of his convictions for first-degree kidnapping, because the state had not sought a dangerous offender sentence on this conviction in the previous sentencing proceeding in which the state argued that this kidnapping conviction merged with one of the

aggravated murder convictions. In support of his contention that he cannot be subject to a dangerous offender sentence, defendant cites *State v. Turner*, 247 Or at 313, and *State v. Coburn*, 146 Or App 653, 934 P2d 579 (1997). For the following reasons, we do not believe that either of those cases leads to the conclusion that defendant may not be sentenced as a dangerous offender. In *Turner*, the court stated:

> "After an appeal or post-conviction proceeding has resulted in the ordering of a retrial for errors other than an erroneous sentence * * * and the defendant has again been convicted, no harsher sentence can be given than that initially imposed. If the initial sentence was incarceration, the defendant subsequently cannot be sentenced to any longer term than the time still to be served upon the initial sentence." 247 Or at 313.

That rule of law is not implicated under these facts. Defendant was not retried on the kidnapping and assault charges and then subjected to a harsher sentence than one originally imposed on those convictions. Rather, his convictions for kidnapping and assault were affirmed. He had not previously been sentenced because they had merged with other convictions; he was sentenced in the first instance after the convictions had been affirmed by the Oregon Supreme Court. The fact that convictions previously had been merged with other convictions that were later reversed does not preclude eventual sentencing on the previously merged convictions.

  *State v. Coburn* bears only superficial resemblance to this case. In *Coburn*, the defendant was sentenced as a dangerous offender on various charges. He successfully pursued post-conviction relief on the ground that the dangerous offender sentence had been calculated erroneously. 146 Or App at 655-56. The post-conviction court vacated the sentence and remanded it for resentencing. On resentencing, the court determined that it could impose a greater sentence under the sentencing guidelines than under the dangerous offender statutes and did so. Following our previously stated rule that " 'a sentencing error determined on post-conviction does not result in a blank slate on sentencing issues,' " *id.* at 659 (quoting *State v. Henderson*, 146 Or App 81, 84, 932 P2d 577 (1997)), we held that "the scope of the post-conviction remand was for correction of the original error within the

dangerous offender provisions. The sentencing court erred in resentencing beyond the scope of that remand." 146 Or App at 660. Here, by comparison, we are not dealing with a limited post-conviction remand for correction of a sentencing error but with a broad remand from the Supreme Court for "further proceedings" in direct appeal from the reversal of related convictions. Defendant was not sentenced on the assault and kidnapping convictions in the first instance because the trial court correctly merged those convictions into the related aggravated murder convictions. Reversal of the aggravated murder convictions accompanied by affirmance of the assault and kidnapping convictions necessarily "unmerges" the convictions.

In sum, the rule from *Turner* is not implicated here because defendant has not been retried and resentenced on the convictions at issue, and the rule of *Coburn* is not implicated because this case does not involve a narrow remand for correction of a specific sentencing error. Defendant argues: "Having not sentenced [defendant] under the dangerous offender scheme in the first proceeding, the trial court is bound by that election." However, no "election" was made in the previous proceeding, because it is undisputed that the only proper way to sentence at that point was to merge the assault and kidnapping convictions with the aggravated murder convictions and to sentence only on the aggravated murder convictions. Although it is true that the trial court did not sentence defendant as a dangerous offender on the kidnapping convictions at that point, it is also true that the trial court did not sentence defendant *at all* on the kidnapping convictions at that point. There was no sentencing "election" to be made—a jury had determined the penalty required for the aggravated murder convictions, and, under the rule of law from *State v. Tucker*, 315 Or at 331, the sentencing court was required to merge the assault and kidnapping convictions with the aggravated murder convictions rather than to sentence defendant separately on those convictions. It was not until after the aggravated murder convictions were reversed that the court had any reason to consider the proper sentences for the kidnapping and assault convictions. At that point, nothing precluded the sentencing court

from determining whether defendant was a dangerous offender subject to sentencing under ORS 161.725 *et seq*.

Finally, defendant argues that his sentence is disproportionate and cruel and unusual under Article I, section 16, of the Oregon Constitution, and under the Eighth Amendment to the United States Constitution.[2] In support of that argument, defendant points to the fact that several other individuals who were convicted of crimes related to the abduction and murder of Misty Largo received lesser sentences than did defendant. In particular, defendant notes that Marvin Al-Tai Juan Smith pled guilty to murder and received a downward departure sentence of only 48 months for that crime. Defendant argues that his 30-year indeterminate dangerous offender sentence for kidnapping of the same victim is disproportionate to Smith's penalty for murder.[3]

Defendant cites no authority for the proposition that constitutional proportionality analysis involves comparing a defendant's crimes with different crimes committed by different people against the same victim, and we are aware of none. Defendant relies on a line of cases that indicate that requiring a greater sentence for a lesser-included crime violates Article I, section 16, of the Oregon Constitution. *See, e.g., State v. McLain*, 158 Or App 419, 974 P2d 727 (1999) (requiring greater sentence for lesser-included offense of murder than for greater offense of aggravated murder violates Article I, section 16, of the Oregon Constitution). The most basic flaw in defendant's argument is that the first-degree kidnapping offense for which he received a dangerous offender sentence is not a lesser-included offense of murder.

In any event, even if such comparisons were valid, defendant's challenge in this assignment of error is to a dangerous offender sentence, which involves evaluation of defendant's mental state and violent propensities as well as the

---

[2] Although defendant cites the Eighth Amendment, he makes no argument concerning that constitutional provision and cites no authority for his contention that his sentence violates that provision. Because this issue has not been adequately briefed, we do not address it.

[3] In *Charboneau*, the Supreme Court stated that Smith "watched [Charboneau] and Wilson kill Largo; he held her legs down while [Charboneau] and Wilson strangled her." 323 Or at 42.

nature of the current crime. Defendant does not take issue with the sufficiency of the evidence supporting the trial court's conclusion that he "suffers from a severe personality disorder indicating a propensity towards crimes that seriously endanger the life or safety of another[.]" Article I, section 16, has never been interpreted to require that individuals who commit different crimes during the same criminal episode receive comparable sentences, regardless of the crimes involved, the nature of their participation in those crimes, and other relevant factors such as their criminal histories, their cooperation with authorities, and their violent propensities. The sentencing court correctly concluded that a dangerous offender sentence for defendant's conviction for first-degree kidnapping was not disproportional under Article I, section 16, of the Oregon Constitution.

Affirmed.